IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALAN M. MCCABE, | ) | CIVIL NO. 08-00112 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING |
| | ) | COMPLAINT PURSUANT |
| vs. | ) | TO 28 U.S.C. § 1915 |
| | ) | |
| MONTE McCOMBER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT
## PURSUANT TO 28 U.S.C. § 1915

Pro se Plaintiff Alan M. McCabe ("Plaintiff") has filed this prisoner

civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is incarcerated at the

Halawa Correctional Facility ("Halawa") and is proceeding *in forma pauperis*.

Plaintiff's Complaint is DISMISSED with leave to amend, pursuant to 28 U.S.C.

§§ 1915A and 1915(e)(2), for failure to state a claim upon which relief may be

granted.

## I.  BACKGROUND

Plaintiff's claims stem from a prison drug test he took in 2007.

Plaintiff alleges that, because he had previously "falsely tested positive for

amphetamines," during a prison-administered urinalysis in 2002, he was forced "to

take steps to avoid a false positive [urinalyisis] result" when he was scheduled to

take another urinalysis on April 24, 2007.  Compl. ¶¶ 28-29, 33.  Thus, when

Plaintiff disrobed as part of the urinalysis,  Defendant Monte McComber

("McComber") "discovered an unauthorized item taped to Plaintiff's body."  *Id.*

¶ 34.  The "unauthorized item" was a vial of bleach taped to Plaintiff's genitals.

Ex. J.[1]  McComber confiscated the vial and collected a urine sample from Plaintiff.

 Compl. ¶ 36.

McComber then issued a Report of Misconduct against Plaintiff,

alleging three infractions:

> (1) possession . . . or use of any narcotic paraphernalia, drugs,
> intoxicants or alcoholic beverages not prescribed for the
> individual by the medical staff, which includes any form of
> being intoxicated; (2) refusing to obey an order of any staff
> member, which may include violations in the low moderate
> category; and (3) attempting, tampering, or obstructing the
> lawful collection of a urine sample.

Ex. C.  Due to the seriousness of these charges, Plaintiff was immediately

transferred from the general population to the Halawa Special Holding Unit for

five days pre-hearing detention.  *Id.*; Compl. ¶¶ 39, 40.

On April 25, 2007, McComber tested Plaintiff's urine sample and

found it contained evidence of amphetamines.  McComber notified Plaintiff of the

results two days later, whereupon Plaintiff demanded a confirmatory test.  *Id.* ¶ 48.

---

[1] All exhibits cited herein refer to those attached to the Complaint.

2

Approximately ten days later, on May 9, 2007, Plaintiff was given the confirmatory test report and realized that it listed inmate Ronald Soares' donor identification number, and that Soares' test results listed Plaintiff's identification number.[2]  *Id.* ¶¶ 59-62.  Soares was drug-tested on the same date as Plaintiff, and was also being held in special holding.  Soares' confirmatory results were negative, however.  Plaintiff immediately reported this discrepancy to Defendant Sargeant Harry Hope, who promised to show the faulty paperwork to McComber.  Soares was released from segregation that day; Plaintiff was not.

On May 11, 2007, McComber brought a copy of the "corrected report" to Plaintiff, identical to the original confirmation report, except that Soares' inmate donor number was crossed out and Plaintiff's inmate identification number was inserted.  Ex. E.  Plaintiff requested the original report, as proof that it was altered, but McComber had destroyed it.

On May 21, 2007, Plaintiff had his first disciplinary hearing before an Adjustment Committee ("First Adjustment Committee").  Compl. ¶ 72.  Plaintiff complained at the hearing that due process had been violated because he was not:

---

[2] It is unclear who conducted Plaintiff's urine tests.  Plaintiff states that: (1)  McComber tested Plaintiff's urine sample first, Compl. ¶ 40; (2) Plaintiff requested a confirmatory test by Defendant Scientific Laboratories, Inc., *Id.* ¶ 48; and (3) McComber showed Plaintiff a "faxed copy of the Kroll Laboratory Specialists, Inc.," confirmatory results on May 9, 2007.  *Id.* ¶¶ 56-59.

(1) given adequate notice of the hearing date or charges; (2) allowed to call or cross-examine witnesses; or (3) allowed to present a defense.[3]  *Id.* ¶ 77.  Plaintiff also complained that First Adjustment Committee members Defendants Pomeroy and Ormsbee were biased because he had filed grievances against them prior to the hearing.  *Id.*  Plaintiff argued that his test results were unreliable because of the chain of custody problems.  Plaintiff was released from segregation five days later, on May 26, 2007.[4]  *Id.* ¶ 78.

On June 19, 2007, Plaintiff was notified that the First Adjustment Committee had found him not guilty on the positive urinalysis charge and guilty on the tampering charge.[5]  Plaintiff objected to these findings.  In response to Plaintiff's complaints, a second hearing was scheduled for July 3, 2007, and a different committee was empaneled ("Second Adjustment Committee").  *Id.* ¶¶ 86-

---

[3] Although Plaintiff claims that he was not permitted to present a defense, he also states that he "raised the claims that the urine specimen was compromised," Compl. ¶ 74, a defense which resulted in a finding that he was not guilty of having a positive urinalysis.

[4] It is unclear what type of detention Plaintiff was under during this period.  Although Plaintiff was originally given a five-day disciplinary segregation, his classification was changed from disciplinary to administrative segregation thereafter.  *See* Ex. M.  Exhibit J shows that Plaintiff was released from special holding on May 26, 2007, because "Disciplinary Segregation [was] Completed."  Further, Plaintiff complains that Ormsbee extended his *administrative* segregation at least three times.  Compl. ¶¶ 55, 71, 76.  Nonetheless, it is clear that Plaintiff was released from all segregation on May 26, 2007.  *Id.* ¶ 88 (stating that Plaintiff's sanction had already been served by the time the Second Adjustment Committee hearing was held).

[5] The charge of refusing to obey an order of any staff member was apparently dropped.  Compl. ¶ 80.

87.  Plaintiff received a written notice of the charges against him and the time and location of the hearing.  *Id.*  The Second Adjustment Committee found Plaintiff guilty of "attempting, tampering, or obstructing the lawful collection of a urine sample," and not guilty of the positive urinalysis charge.  *Id*. ¶ 89.

Plaintiff concedes that he intended to tamper with his April 24, 2007 urine sample, and took affirmative steps toward doing so.[6]  Throughout his lengthy Complaint, Plaintiff *never* denies taping a vial of bleach to his genitals with the intent to tamper with his urine specimen.  To the contrary, Plaintiff justifies his attempted tampering by recounting how he spent eighteen days in disciplinary segregation due to an alleged false-positive urinalysis in March 2002, which Plaintiff claims was caused by prison officials' improper test administration.  *Id.* ¶¶ 27-28, 30.  Nonetheless, Plaintiff believes that, because the urinalysis results were compromised, all charges against him should have been dropped, including the tampering or attempted tampering charge.

## II.  <u>STANDARD OF REVIEW</u>

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee

---

[6] Specifically, Plaintiff admits that he "t[ook] steps to avoid a false positive U.A. result," and that he had concealed an unauthorized item taped to his body.  Compl. ¶¶ 33-34.

of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the court must

identify any cognizable claims and dismiss any claims that are frivolous,

malicious, fail to state a claim upon which relief may be granted, or seek monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The court must construe pro se pleadings liberally and afford the pro se litigant the

benefit of any doubt.  *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).

In reviewing a complaint, the court must accept as true the allegations

of the complaint in question, *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740

(1976), construe the pleading in the light most favorable to the plaintiff, and resolve

all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

"Unless it is absolutely clear that no amendment can cure the defect . . . , a pro se

litigant is entitled to notice of the complaint's deficiencies and an opportunity to

amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

(9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

banc).

## III.  <u>ANALYSIS</u>

Plaintiff's seventy-three page, handwritten Complaint and twenty

pages of exhibits is a laundry list of prisoner rights terms-of-art.  Plaintiff alleges:

"intentional negligence;" "failure to protect;"[7] "breach of contract or legal duty;" "deliberate indifference;" due process violations; "failure to train;"[8] retaliation; and conspiracy.  Although lengthy and convoluted, the Complaint attempts to set forth grounds in support of Plaintiff's primary request for relief -- that the disciplinary record of his attempt to tamper with the collection of a urine specimen be expunged because of alleged due process violations.[9]  Compl. ¶ 72.

The gravamen of Plaintiff's claims is that Defendants violated his civil rights by placing him in disciplinary segregation pending an investigation of a disciplinary charge against him, conducting a disciplinary hearing that violated his procedural due process rights, and then, after recognizing that Plaintiff's due process claims had some merit, holding a second disciplinary hearing, at which he was also found guilty.  Plaintiff also alleges that these acts were retaliatory.

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal

---

[7] Plaintiff does not allege an Eighth Amendment failure to protect claim, but instead alleges that Defendants "failed to protect" him from the Adjustment Committee's improper findings of guilt.

[8] Plaintiff alleges Defendants failed to train prison employees on the proper handling of urine specimens and urinalysis results, as well as in processing disciplinary hearings.

[9] Plaintiff also seeks money damages.

7

constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir.

2007) (citation omitted); *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A.    Defendants Are Immune from Suit in Their Official Capacities

Plaintiff names all Defendants in their individual and "professional"

or official capacities.  The Eleventh Amendment bars damage actions against state

officials in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*,

131 F.3d 836, 839 (9th Cir. 1997).  Suits seeking prospective injunctive relief

against official capacity defendants are not, however, barred.  *Id.*  In addition,

neither states, state officials acting in their official capacities, nor state agencies

are considered "persons" under § 1983.  *Will v. Mich. Dep't State Police*, 491 U.S.

58, 71 (1989); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.

Defendants are immune from suit for damages in their official

capacities, and the court is without jurisdiction over these claims.  Further, the

Department of Public Safety, as an arm of the state, is not a person within the

meaning of § 1983 and is DISMISSED.  As discussed more fully below, Plaintiff's

only claim for injunctive relief, the expungement of his prison records, is not a

claim to which he is entitled to relief.  As such, Defendants in their official

capacities are DISMISSED.  *See* 28 U.S.C. § 1915(e)(2)(iii).

The Eleventh Amendment is not a bar that may be cured by the filing

of an amended complaint.  While this Order gives Plaintiff leave to submit an

amended complaint, he may not reassert claims dismissed here as barred by the

Eleventh Amendment.

**B.      Due Process Claims Are Dismissed**

Plaintiff claims that Defendants McComber, Condon, Ormsbee,

Pomeroy, Aribon, Santiago, and Voyels violated due process in relation to his

disciplinary segregation and the manner in which the First Adjustment Committee

hearing was conducted.  Plaintiff also claims that Defendants Shimoda, Frank,

Rivera, and Paleka violated due process during his attempts to administratively

grieve his claims.

### *1.      Plaintiff's Placement in Segregation Did Not Violate Due Process*

A prisoner may be entitled to certain due process protections when he

is charged with a disciplinary violation.  *Wolff v. McDonnell*, 418 U.S. 539,

564-71 (1974).  These protections include the right to call witnesses, to present

documentary evidence, and to have a written statement by the fact finder as to the

evidence relied upon along with the reasons for the disciplinary action taken.  *Id.*

These procedural protections apply, however, only when the

disciplinary action imposes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472,

484 (1995); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process." (citations omitted)).[10]

Placement in administrative or disciplinary segregation, in and of itself, does not implicate a protected liberty interest. *See, e.g., Sandin*, 515 U.S. at 486 (discussing segregation in Halawa, and stating, "[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody," and therefore, does not violate due process); *Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (holding that pre-sentencing prisoner had no liberty interest in being free from administrative segregation). *Sandin* held that a thirty-day confinement in disciplinary segregation at Halawa was "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487, and did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id*. at 485.

*Sandin* provides the following factors to determine whether a prison

---

[10] The due process clause can also apply "of its own force" if a freedom of restraint exceeds the inmate's sentence in an "unexpected manner." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

hardship is atypical and significant: (1) whether the challenged confinement "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," thus comporting with the prison's discretionary authority; (2) the duration of the confinement, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.*, 515 at 486-87.

Plaintiff alleges no facts showing that his placement in disciplinary segregation presented a dramatic departure from the basic conditions of his life at Halawa, or even, a dramatic departure from placement in administrative segregation. Plaintiff simply concludes that his *placement* in segregation violated due process. *See* Compl. ¶ 33.[11] Plaintiff, however, was apparently "transferred" from disciplinary to administrative segregation while awaiting his Adjustment Committee hearings, and the difference was so insignificant, that he was unaware of the fact. *See* Ex. M. Thus, Plaintiff's segregation was comported with the prison's discretionary authority. Plaintiff was held in segregation for thirty-two days, a period of time that was constitutionally acceptable in *Sandin*, and did not

---

[11] In an apparent effort to conform this claim to the *Sandin* standard, Plaintiff states that his positive urinalysis results "impose upon plaintiff hardships not typical incident of prison life, such as disciplinary segregation and administrative segregation that are punitive in nature." Compl. ¶ 33.

extend the length of Plaintiff's five-year sentence. The court concludes that Plaintiff's placement in segregation, whether that segregation was termed disciplinary or administrative, from April 24 until May 26, 2007, did not impose an "atypical and significant hardship" to the ordinary incidents of Plaintiff's life in Halawa, such that a liberty interest was created, and therefore, did not violate due process.

## 2.     *Plaintiff's Disciplinary Segregation Was Supported by Some Evidence*

The Supreme Court has held that the requirements of procedural due process are met if the findings of a prison disciplinary board are supported by some evidence in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454-56 (1985); *see also Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). As the Supreme Court stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Walpole*, 472 U.S. at 456 (internal citations omitted). The Adjustment Committees' findings that Plaintiff was guilty of attempting to tamper with a urinalysis was clearly supported by the vial of bleach found taped to Plaintiff's

genitals, and Plaintiff's refusal to explain why the bleach was found on his body.[12]
Plaintiff fails to state a claim for the deprivation of procedural due process.

### 3. *Alleged Due Process Concerns During First Adjustment Committee Hearing Were Corrected*

Any alleged due process violations that occurred during Plaintiff's
First Adjustment Committee hearing were cured by Plaintiff's Second Adjustment
Committee hearing.  First, Plaintiff was released from segregation long before the
Second Adjustment Committee hearing was held.  Second, Plaintiff's exhibits
show that he was given twenty-four hours notice of the second hearing, a
statement of the charges against him, an opportunity to have a representative with
him at the hearing, an opportunity to respond to the charges, a written statement by
the fact finder of the evidence relied upon, and the reasons for imposing the
disciplinary action.  *See* Ex. K.  Plaintiff, rather than calling witnesses and
presenting a defense against the remaining charges at that hearing or explaining
why the vial of bleach was found taped to his genitals, chose to remain silent.  *Id.*
The Second Adjustment Committee then found Plaintiff guilty of attempting to
tamper or obstruct the lawful collection of a urine sample.  The other charges were

---

[12] Moreover, Plaintiff admits that he intended to tamper with the urinalysis because of an allegedly false-positive drug test result in 2002, although this fact was apparently not before either of the Adjustment Committees.

either dropped or determined to be without merit.  Although Plaintiff claims that

he was not given the opportunity to cross-examine witnesses against him, this is

not generally a right to which he is entitled.  *See Wolff*, 418 U.S. at 567.  Even if

Plaintiff possessed a liberty interest here, he was afforded all of the process to

which he was entitled.  Due Process claims against McComber, Condon, Ormsbee,

Pomeroy, Aribon, Santiago, and Voyels are DISMISSED for failure to state a

claim.

### 4.    *Due Process Claims Based on the Halawa Grievance System*

Plaintiff also claims that Defendants Shimoda, Frank, Rivera, and

Paleka violated due process by either responding, failing to respond, or responding

negatively to Plaintiff's grievances concerning this matter.  The court finds that

Plaintiff fails to state a due process claim against these Defendants based on the

prison grievance system.

Prisoners do not have "a separate constitutional entitlement to a

specific prison grievance procedure."  *Ramirez*, 334 F.3d at 860 (*citing Mann v.

Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that the Arizona Department of

Corrections' unpublished administrative policy statements establishing a grievance

procedure do not constitute a state-created liberty interest)).  Even the

non-existence of, or the failure of prison officials to properly implement, a

grievance system does not raise constitutional concerns. *Mann*, 855 F.2d at 640;

*see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932

F.2d 728 (8th Cir. 1991); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)

("[A prison] grievance procedure is a procedural right only, it does not confer any

substantive right upon the inmates. Hence, it does not give rise to a protected

liberty interest requiring the procedural protections envisioned by the fourteenth

amendment"). Shimoda and Frank's failure to answer Plaintiff's grievances,

Rivera's notification that Plaintiff could proceed to litigation, the alleged negative

responses to other grievances, and Paleka's response informing Plaintiff that his

custody was changed from disciplinary to administrative segregation after five

days, do not form the basis for constitutional violations. Plaintiff's due process

claim against Shimoda, Frank, Rivera, and Paleka are DISMISSED for failure to

state a claim.

## C.   Retaliation Claims are Dismissed

Plaintiff repeatedly alleges that Defendants retaliated against him.

His claims, however, are conclusory, do not clearly tie a specific Defendant to a

specific claim, and do not conform to the facts and timeline of events presented.[13]

---

[13] The distinction between Plaintiff's retaliation claims and his free-standing due process claims is often difficult to discern. Plaintiff often simply alleges "Defendants" retaliated against him throughout the Complaint, without clearly explaining which Defendants allegedly undertook

It appears that Plaintiff alleges that McComber retaliated against him by placing him in segregation and by keeping him there until the First Adjustment Committee met.  Plaintiff claims that the First Adjustment Committee retaliated against him by holding the first hearing, despite Plaintiff's grievances alleging the drug test's chain of custody problems.  Plaintiff then claims that, in retaliation for his refusal to waive his right to grieve or accept the First Adjustment Committee's guilty finding, Defendants, presumably the First and Second Adjustment Committee members, held a Second Adjustment Committee hearing, rather than simply dropping all of the charges against him.  Plaintiff also claims that Defendants Kroll Laboratory Specialists, Inc. ("Kroll") and Scientific Testing Laboratories, Inc. ("STL"), retaliated against him, presumably when they ran his confirmatory urinalysis tests, but gives no explanation of how or why they did so.  Finally, Plaintiff alleges that Defendants retaliated against him by denying his grievances after he had contacted the Ombudsman.  *See* Compl. ¶¶ 84, 101, 103, 107, 109, 110, 117, 120, 121, 131-137.

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  This right of access extends

what specific retaliatory actions in response to the exercise of Plaintiff's civil rights.

16

to established prison grievance procedures.  *Id.*  Prison officials may be sued under

§ 1983 for retaliating against a prisoner for exercising his or her First Amendment

rights.  *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).  A retaliation

claim involves: "(1) [a]n assertion that a state actor took some adverse action

against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and

(5) the action did not advance a legitimate correctional goal."  *Rhodes v.

Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a retaliation claim, a

prisoner must plead facts which suggest that retaliation for the exercise of

protected conduct was the "substantial" or "motivating" factor behind the

defendant's conduct.  *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314

(9th Cir. 1989).  A prisoner "bears the burden of pleading and proving the absence

of legitimate correctional goals for the conduct of which he complains."  *Pratt v.

Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

          In addition, the Ninth Circuit cautions that prisoners' retaliation

claims must be evaluated in light of concerns over "excessive judicial involvement

in day-to-day prison management, which 'often squander[s] judicial resources with

little offsetting benefit to anyone.'"  *Pratt*, 65 F.3d at 807 (*quoting Sandin*, 515

U.S. at 482).  In particular, courts should "'afford appropriate deference and

flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (*quoting Sandin*, 515 U.S. at 482). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

## 1.   *No Retaliation by Placement in Segregation, or Holding First Adjustment Committee Hearing*

Plaintiff's claim that Defendants retaliated against him by placing him in segregation, whether disciplinary or administrative, and by holding the First Adjustment Committee hearing, is not borne out by the timeline of events he sets forth. Plaintiff was placed in segregation on the day the vial of bleach was discovered on his person, long before he exercised his First Amendment rights to file grievances. He was also given notice on that date that he would be held in segregation pending an investigation of the charges against him, which would include holding a disciplinary hearing (the First Adjustment Committee hearing). There was not, therefore, a but-for nexus or a demonstrated link between the alleged retaliation and Plaintiff's protected activity (*i.e.*, filing grievances). *See Pratt*, 65 F.3d at 808. Moreover, based on the facts he presents, Plaintiff cannot

show the *absence* of a legitimate correctional goal for his placement in segregation

or for holding the First Adjustment Committee hearing.

Insofar as Plaintiff claims that he was kept in segregation for longer

than necessary, Plaintiff also fails to state a claim for retaliation.  Plaintiff admits,

after all, that he taped a vial of bleach to his body with the intent to alter his

urinalysis.  The record shows that the Second Adjustment Committee actually

sanctioned Plaintiff to sixty-days segregation, with credit for the thirty-two days

already served, and that he was apparently not returned to segregation to serve the

remaining days.[14]  Plaintiff was segregated until the serious charges against him

were resolved.  Plaintiff had no defense to the charge that he attempted to tamper

with the urinalysis, at either hearing, or now.  Although he was found guilty of

attempting to tamper with his urinalysis, Plaintiff was released *before the First

Adjustment Committee imposed any sanction against him*, pending a second

investigation and hearing.  There was clearly a legitimate correctional goal served

by Plaintiff's detention.  There was no adverse action taken against Plaintiff for

filing grievances and making complaints.  Rather, the First Adjustment Committee

withheld their finding of guilt for the tampering charge, withheld imposition of

---

[14] Although Plaintiff was given a sixty-day sanction, *see* Ex. K, it does not appear from the Complaint that Plaintiff served additional days in segregation beyond the thirty-two days ending on May 26, 2007.

punishment, and released Plaintiff.  It is clear that Plaintiff's grievances and complaints led to the dismissal of the more serious charges against him, the decision to hold a Second Adjustment Committee hearing, and the decision to release Plaintiff pending that second hearing.  These facts cannot support a finding that Plaintiff's First Amendment rights were chilled.

### 2. *No Retaliation by Defendants Kroll or STL*

Plaintiff conclusorily alleges that Defendants Kroll and STL, the laboratories that performed the confirmatory tests on Plaintiff's urine sample, retaliated against him.  Compl. ¶ 135.  Plaintiff alleges no facts supporting this allegation.  He simply states that Kroll and STL acted in retaliation when they violated their own and DPS policies when they ran their tests, presumably without ascertaining whether Plaintiff was present when the samples were sealed and whether the identification numbers on the samples correctly matched the inmates who provided the samples.

These claims are absurd.  First, the timeline alleged by Plaintiff does not support a finding of retaliation against Kroll or STL.  Plaintiff did not file his first grievance until May 8, 2007, and it was not answered until May 27, 2007, long after the confirmatory tests were completed.  *See* Ex. H.  Kroll and STL therefore could not have known that Plaintiff had filed grievances or called the

Ombudsman's Office when they ran their tests.  Plaintiff also does not explain

Kroll's or STL's motivation for "retaliating" against him by performing the test he

requested.  Nor does Plaintiff explain why his grievances against *prison officials*

would have had an effect on Kroll's and STL's testing procedures, or induce them

to retaliate in an effort to chill his First Amendment rights.  The facts here do not

support a claim of retaliation by either Kroll or STL.

### 3. *No Retaliation in Holding the Second Adjustment Committee Hearing*

Plaintiff's claim that Defendants held the Second Adjustment

Committee hearing in retaliation for his filing grievances and registering protests

concerning the First Adjustment Committee's findings is also simply not

supported by the facts he presents.  Plaintiff asserted orally and in grievances that

Defendants violated due process when they failed to give him twenty-four hours

notice of the First Adjustment Committee hearing, failed to give him a copy of the

charges, violated the chain of custody of his urine sample, and composed a

committee comprised of allegedly biased members.  *See* Compl. Ex. K.

In response to these complaints, Defendants disregarded the First

Adjustment Committee's findings, empaneled a new panel (the Second

Adjustment Committee) to preside over a new hearing, gave Plaintiff adequate

notice of the new hearing, gave Plaintiff an opportunity to defend himself, and ultimately disregarded the urinalysis test based on Plaintiff's argument that the chain of custody had been broken.[15]  *Id*.  This was a reasonable and commendable response to Plaintiff's grievances and protests.

The finding of guilt for attempting to tamper with the test -- based on the recovered vial of bleach and Plaintiff's decision not to explain -- was entirely proper and cannot be viewed as retaliation.  The fact that Plaintiff wanted the results of the first hearing expunged and the charges dropped entirely, and instead was given a second hearing, does not convert Defendants' actions into retaliation.  Holding a Second Adjustment Committee hearing after Plaintiff complained is not an adverse action, and in any event, it advanced a legitimate correctional goal -- holding fair disciplinary hearings at the prison.

### 4.   *Defendants' Handling of Plaintiff's Grievances Was Not Retaliatory*

Plaintiff also complains that Defendants' responses, or in some cases, non-responses, to his grievances were in retaliation for filing the grievances or for his contacting the Ombudsman.  Responding (or failing to respond) to a prisoner's grievance in a manner unagreeable to the prisoner is not an adverse action taken

---

[15] Of course, the First Adjustment Committee also disregarded the positive urinalysis results and found Plaintiff not guilty of drug use.

against the prisoner for filing the grievance.  If it were, every time a prisoner

disagreed with a Defendant's legitimate response to a grievance, it could result in

a sustainable claim of retaliation.  The fact that Defendants upheld Plaintiff's

discipline was not because Plaintiff exercised his right to grieve his claims, but

because the Adjustment Committee's responses to Plaintiff's infraction were

reasonable.  Nor can Plaintiff show that Defendants' responses to his grievances

chilled the exercise of his rights.  Instead, Defendants' responses were a part of the

exercise of Plaintiff's First Amendment rights.  Defendants did not prevent

Plaintiff from grieving his claims, or from calling the Ombudsman, or from

bringing this civil action.  They simply upheld the discipline imposed.

Plaintiff fails to state a claim for retaliation and those claims are

DISMISSED pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2).

## D.     Conspiracy Claims Are Dismissed

Plaintiff alleges that McComber, Kroll, and STL conspired against

him, and suggests throughout the Complaint that all Defendants were engaged in a

conspiracy against him.  Plaintiff provides no facts supporting his conspiracy

theory against any Defendant, however.

A plaintiff can state a conspiracy to violate civil rights claim under

either 42 U.S.C. § 1983 or § 1985.  *Klingele v. Eikenberry*, 849 F.2d 409, 413 (9th

Cir. 1988).  A cognizable § 1985(3) conspiracy claim requires factual allegations showing that the alleged conspirators' actions were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted) (also observing civil rights statutes prohibiting conspiracies to deprive persons of their legally protected rights are not to be construed as general federal tort law).

The Complaint, however, is devoid of facts showing that Plaintiff is a member of a protected class or that McComber, Kroll, STL, or any Defendant was motivated by discriminatory animus.  Plaintiff never refers to himself in racial terms nor does he develop any specific claim against any Defendant showing that they acted toward him out of racial animus associated with his urinalysis, his disciplinary charges, his placement in segregation, his filing of grievances, or his disciplinary hearings.  Plaintiff neither cites § 1985(3) in the Complaint, nor do his insubstantial allegations permit any reasonable inference that he is proceeding under § 1985(3) on a theory Defendants intended to deprive him of equal protection arising from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Insofar as he alleges a conspiracy claim against any Defendant under § 1985, that claim is DISMISSED.

Insofar as Plaintiff is alleging a conspiracy clam under § 1983, that claim is subject to a higher pleading standard than is set forth in Rule 8(a)(2) and requires him to assert nonconlusory allegations containing evidence of unlawful intent. *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *see Olsen v. Idaho Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (a plaintiff must plead "specific facts to support the existence of the claimed conspiracy") (citation omitted); *see also Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (a pleading alleging conspiracy must present specific, nonconclusory allegations of subjective intent, a required element of such a claim); *Foster v. Skinner*, 70 F.3d 1084 (9th Cir. 1995). This heightened pleading standard is satisfied by specific allegations showing "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights . . . ." *Harris*, 126 F.3d at 1196.

Plaintiff provides no facts suggesting unlawful subjective intent between McComber, Kroll, STL, or any other Defendant, to conspire against him. Nor are any specific facts alleged showing how Defendants conspired against him. Most importantly, as the court has found that Plaintiff fails to state a claim for due process violations or retaliation, Plaintiff's conspiracy claims also fail. Absent the element of a requisite liberty or property interest deprivation, a plaintiff cannot

state an actionable claim under § 1983 that defendants conspired to deprive him of civil rights. *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126-27 (9th Cir. 1989) (a "conspiracy allegation, even if established, does not give rise to liability under section 1983 unless there is an actual deprivation of civil rights"). It is insufficient to plead or prove one without the other. *Id.*; *see also Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir. 1984); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (the "essence of a § 1983 claim is the deprivation of the right rather than the conspiracy"). Plaintiff's conspiracy allegations must follow the fate of his due process and retaliation claims and are DISMISSED.

## E.   Defendants Ho'omana, Hope, Kroll, STL, Frank, Sequeira, Shimoda, Rivera, and Paleka, Are Dismissed

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### 1.    *Claims Against Defendant Ho'omana Are Dismissed*

Plaintiff claims Defendant Hanford Ho'omana was "intentionally negligent" when he "approved" Plaintiff's transfer to disciplinary segregation, by signing McComber's pre-hearing detention notice. In other words, when Plaintiff was found with bleach taped to his body, and sent to disciplinary segregation pending investigation, Ho'omana signed the transfer slip. Plaintiff supplies no facts linking Ho'omana to Plaintiff's constitutional claims of due process violations, conspiracy, or retaliation. There is no cause of action for "intentional negligence," under state or federal law, and even liberally construing this claim, the court cannot discern what federal right was violated by Ho'omana's actions. Plaintiff fails to state a claim that is cognizable under § 1983 against Ho'omana,

and claims against him are DISMISSED, with leave to amend.

### 2.    *Claims Against Defendant Hope Are Dismissed*

Plaintiff claims that Defendant Harry Hope was present when McComber informed Plaintiff about his positive urinalysis results and was "intentionally negligent" for failing to retrieve Plaintiff's copy of the test results from McComber.  Again, the court cannot discern any violation of Plaintiff's constitutional rights by Hope's actions or any link between Plaintiff's claims and Hope.  Claims against Hope are DISMISSED for failure to state a claim, with leave to amend.

### 3.    *Claims Against Defendants Kroll and  STL are Dismissed*

Plaintiff claims Defendants Kroll and STL were "intentionally negligent" when they violated their own and DPS policies and procedures by accepting and testing Plaintiff's urine sample, even though the sample had been sealed outside of Plaintiff's presence.  Compl. ¶ 123.  Plaintiff says that Kroll and STL failed to "certify" his test results, failed to invalidate Plaintiff's test specimen when the chain of custody was broken, and somehow conspired with McComber to falsify the test results.  *Id.*  These allegations fail to state a claim.

In contrast to his claims against Kroll and STL, however, Plaintiff vehemently asserts that *McComber* failed to seal the urine specimen in front of

Plaintiff before he sent it to the laboratories to be tested.  Plaintiff does not explain how Kroll or STL could have known this, but simply claims that they should not have accepted a urine sample that was sealed outside of the donor's presence. Plaintiff also states that *McComber* compromised the urine samples' chain of custody *before* they were sent to Kroll and STL for confirmatory tests, and that *McComber* changed the identification numbers on the urine samples *after* Kroll and STL returned the results.

Accepting as true Plaintiff's claims against McComber, and in light of the timetable Plaintiff alleges, Plaintiff's claims against Kroll and STL fail.  If McComber mixed up the urine samples, sealed the samples (outside of Plaintiff's presence), sent them to Kroll and STL, and changed the samples' identification numbers only after the results were returned and Plaintiff pointed out their discrepancy, then Kroll and STL's only involvement was to test the already compromised samples and send the results back to the prison.  The court cannot fathom how these actions violated Plaintiff's constitutional rights.  Claims against Kroll and STL are DISMISSED with leave to amend.

### 4.   *Claims Against Defendants Frank, Sequeira, Shimoda, Rivera, and Paleka Are Dismissed*

Plaintiff's seeks to implicate Defendants Clayton Frank, Director of

the Department of Public Safety ("DPS"), Francis Sequeira, Acting Halawa

Warden, Edwin Shimoda, Interim DPS Deputy Administrator, Linda Rivera,

Halawa Grievance Coordinator, and Dallen Paleka, Halawa Chief of Security in

their supervisory capacities.  Plaintiff complains that: (1) Frank, as DPS Director,

failed to protect Plaintiff and placed him at "foreseeable" risk; (2) Shimoda failed

to answer Plaintiff's grievances; (3) Sequeira upheld the denial of Plaintiff's

grievances, after Plaintiff was released from segregation; (4) Rivera informed

Plaintiff that, because Shimoda failed to answer Plaintiff's grievances, he was free

to bring suit, and allegedly denied Plaintiff the right to bring certain grievances,

and (5) Paleka responded to a grievance in an unsatisfactory way.

      Plaintiff alleges no facts tying these supervisory Defendants to his

due process, conspiracy, or retaliation claims, other than his filing grievances

against the remaining Defendants that were either upheld, addressed, or not

responded to.  Plaintiff does not allege that Defendants Frank, Sequeira, Shimoda,

Rivera, or Paleka participated in or directed the alleged violations, or knew of the

alleged violations beforehand and failed to act to prevent them. *See Taylor v. List*,

880 F.2d 1040, 1045 (9th Cir. 1989).

      An individual's "general responsibility for supervising the operations

of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*,

825 F.2d 1276, 1277 (8th Cir. 1987).  Claims against Defendants Frank, Shimoda,

Sequeira, Rivera, and Paleka are DISMISSED for failure to state a claim, with

leave to amend.

**F.    Expungement Is Not Available**

Plaintiff's primary request for relief is expungement of the Second

Adjustment Committee's guilty finding from his prison records.  Plaintiff's

purpose for seeking expungement is unclear.  Plaintiff does not allege that the

disciplinary charge has had any impact on the fact or duration of his sentence,

such as the denial of parole or loss of good time credits.  If he did, however, such a

claim must necessarily be brought in a habeas action, not as a civil rights action.

*See Docken v. Chase*, 393 F.3d 1024, 1026 (9th Cir. 2004) (holding challenges

implicating fact or duration of confinement must be brought by way of habeas

petition).

If Plaintiff seeks expungement of the disciplinary charge for some

other reason, perhaps to be eligible for a prison job or a particular housing

assignment, and a successful challenge would not necessarily shorten his sentence,

this action is properly brought under § 1983.  *Ramirez*, 334 F.3d at 859.

Nonetheless, because Plaintiff admits his intent to tamper with the urinalysis -- the

very basis for his disciplinary infraction -- he is not entitled to expungement.

"Federal courts have the equitable power 'to order the expungement of Government records where *necessary* to vindicate rights secured by the Constitution or by statute.'" *Fendler v. U.S. Parole Comm'n*, 774 F.2d 975, 979 (9th Cir. 1985) (*quoting Chastain v. Kelley*, 510 F.2d 1232, 1235 (D.C. Cir. 1975)). In an analogous situation, a court may order expungement of a criminal record in "extraordinary," "unusual," or "extreme circumstances." *See United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991) (stating that expungement is proper only in "extraordinary circumstances" (citations omitted)); *Shipp v. Todd*, 568 F.2d 133, 134 n.1 (9th Cir. 1978) (noting that power to order expungement is limited to "unusual" or "extreme" cases).

Expungement is not available to Plaintiff because he admits that he intended to tamper with his urine sample by taping a vial of bleach to his genitals, resulting in his guilty charge. Other than this charge, to which Plaintiff admits he is guilty, there is nothing to expunge because all other disciplinary charges were dismissed. There are no extraordinary, extreme, or unusual circumstances here warranting expungement of Plaintiff's disciplinary charge. The Constitution and laws of the United States secure no right whereby a petitioner is entitled to expungement of an offense he admits he committed. Therefore, Plaintiff is not entitled to expungement and has failed to state a claim for relief under § 1983.

### G.    Leave to Amend Is Granted

Although it is very unclear how Plaintiff can amend his claims based on the facts and circumstances that he has presented, in an abundance of caution the court **GRANTS** Plaintiff leave to amend his Complaint.  Plaintiff is NOTIFIED, however, that he cannot simply reallege these claims without reference to the instructions provided by this Order.  Plaintiff should carefully read this Order, and determine whether there are any further facts that can be asserted that will support his claims.  Plaintiff may not reassert claims that have been dismissed on Eleventh Amendment immunity.  If he decides to amend his Complaint, Plaintiff must allege what action each specific Defendant took that violated his rights.  Plaintiff is cautioned that he may not assert new claims that are unrelated to the conduct, transactions or occurrences that he alleges form the basis for this Complaint.  Fed. R. Civ. P. 15(c)(1)(B).  Plaintiff should also simplify his Complaint by avoiding legal terms and unnecessary repetition of the facts.  Finally, Plaintiff is **DIRECTED** to file any amended complaint on the court's prisoner complaint form which will be provided to him.

Plaintiff is **GRANTED** until **October 3, 2008** to file an amended complaint.  Failure to file an amended complaint on or before **October 3, 2008** that sufficiently cures the noted deficiencies will result in dismissal of this action

pursuant to 28 U.S.C. §§ 1915A(e)(2) and 1915(e)(2), and shall constitute a strike under 28 U.S.C. § 1915(g).

## IV.  CONCLUSION

Plaintiff's Complaint is **DISMISSED** pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), for failure to state a claim upon which relief may be granted.  Specifically, the court finds:

1.      All Defendants are immune from suit for damages in their official capacities, and Plaintiff does not seek prospective injunctive relief to which he is entitled.  Defendants in their official capacities are therefore **DISMISSED**, without leave to amend.  Moreover, the Department of Public Safety is not a person within the meaning of § 1983 and is **DISMISSED** without leave to amend.

2.      Plaintiff fails to state a claim for a violation of due process, either in connection with his disciplinary or administrative segregation before and during his adjustment committee hearings, at those hearings, or due to the Halawa grievance procedures.  Plaintiff's due process claims are **DISMISSED** with leave to amend.

3.      Plaintiff fails to state a retaliation claim against any Defendant and those claims are **DISMISSED** with leave to amend.

4.      Plaintiff fails to state a conspiracy claim against any Defendant and

those claims are **DISMISSED** with leave to amend.

     5.    Plaintiff fails to otherwise state a claim against Defendants Ho'omana, Hope, Kroll, STL, Frank, Shimoda, Sequiera, Rivera and Paleka, and claims against them are **DISMISSED** with leave to amend.

     6.    Plaintiff has no right to expungement of his prison records on the facts alleged in the Complaint. This request for relief is **DISMISSED** without leave to amend.

     7.    Plaintiff is **GRANTED until October 3, 2008,** to file an amended complaint curing the deficiencies discussed above.  Plaintiff is notified that any amended pleading must relate back to the claims in the original Complaint. Plaintiff may not add new claims or new defendants that were not involved in the conduct, transactions, or occurrences set forth in the original Complaint.  *See* Fed. R. Civ. P. 15(c).

     Moreover, any amended complaint must "reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference."  Local Rule 10.3.  The document must bear the docket numbers assigned to Plaintiff's individual case and must be clearly labeled "Amended Complaint."

     Finally, failure to file an amended complaint on or before **October 3,**

**2008,** that sufficiently cures the noted deficiencies will result in the

**AUTOMATIC DISMISSAL** of this action pursuant to 28 U.S.C. §§ 1915A(e)(2)

and 1915(e)(2), and shall constitute a strike under 28 U.S.C. § 1915(g).

8.      The Clerk is **DIRECTED** to send Plaintiff a blank prisoner civil

rights complaint form so that he may amend the Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 5, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McCabe v. McComber*, et al., Civ. No. 08-00112 JMS/KSC; Order Dismissing Complaint
Pursuant to 28 U.S.C. § 1915; dmp/screening orders 08/ McCabe 08-112 JMS-KSC (dsm comp,
dmp version).wpd